## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER GALLOWAY, individually and in the Right of and for the Benefit of Adherence Consulting Group, LLC, | CIVIL ACTION NO. 3:22 - CV - 979 (CSH) |
| Plaintiff, | |
| v. | |
| SALEEMAH AHAMED, | AUGUST 4, 2022 |
| Defendant. | |

### ORDER RE: EXPEDITED STATUS CONFERENCE ON MOTION FOR TRO [Doc. 2]

**HAIGHT, Senior District Judge:**

### I.  INTRODUCTION

Plaintiff Peter Galloway commenced this action, individually and "in the Right of and for the Benefit of Adherence Counsulting Group, LLC" (herein "Adherence Consulting"), against Defendant Saleemah Ahamed for alleged breaches of her fiduciary duty with respect to both Galloway and Adherence Consulting. Doc. 1 ("Verified Complaint"), ¶ 1.  In particular, Galloway asserts that Ahamed has "frozen" him out from all Adherence Consulting  systems, removed his email account, and prohibited his access to prior emails. *Id.* ¶ 2.  In addition, Ahamed "has attempted to freeze Galloway out of access to Adherence [Consulting] financial information and input into financial decisions and, in doing so, Ahamed has caused the financial operation of [that entity] to come to a virtual standstill." *Id.* ¶ 3.

In his "Verified Complaint," Plaintiff sets forth three causes of action: (1) breach of fiduciary

1

duty, owed by Ahamed to Galloway, for "unqualified loyalty, fairness, in good faith, and without self-interest;" (2) breach of fiduciary duty, owed by Ahamed to Adherence Consulting, "to act at all times with undivided and unqualified loyalty, fairness, in good faith and without self-interest;" and (3) "temporary, preliminary, and permanent injunctions" to prevent Ahamed from "continu[ing] to hold Adherence [Consulting]'s financial business at a standstill" and "freez[ing] Galloway out of all financial information and approvals." Doc. 1, at 7-9.

In conjunction with his Complaint, Plaintiff has filed a contemporaneous  "Motion for a Preliminary Injunction and Temporary Restraining Order." Doc. 2.  In that motion, Galloway seeks injunctive relief to "redress" – on behalf of himself, individually and in the right and for the benefit of Adherence Consulting –  Ahamed's alleged "breaches of fiduciary duty against both Galloway as a minority member of Adherence [Consulting] and against Adherence [Consulting]." Doc. 2, at 1. However, the Court cannot proceed to evaluate evidence or resolve the motion until it establishes that it has subject matter jurisdiction and may proceed without contravening or disrupting a pending state court action.  Because Plaintiff appears to lack standing,  has failed to allege sufficient facts to establish "diversity of citizenship," and has a concurrent state action which may implicate the *Burford* abstention doctrine,  the Court enters the  Order below.

## II.  DISCUSSION

In light of the urgent nature of Plaintiff's request for a temporary restraining order, the Court will hear from the parties in a status conference on Zoom.  However, the parties are advised that there are a number of preliminary issues to be addressed before any resolution of the requested TRO. These issues include: standing, "diversity of citizenship" subject matter jurisdiction, and potential application of the *Burford* abstention doctrine.

2

**A.  Standing**

The Court is required to address standing even if the issue has not been raised by the parties. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir.2012) (citation omitted).  *See also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("Generally, '[s]tanding is a federal jurisdictional question 'determining the power of the court to entertain the suit.' ") (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir.2010)).  "[A] plaintiff must demonstrate standing for each claim" and form of relief sought.  *Mahon*, 683 F.3d at 64 (citation omitted).  "As with questions of jurisdiction generally, the party invoking the authority of the court bears the burden of proof on the issue of standing."  *Lee v. Bd. of Governors of the Fed. Rsrv. Sys.*, 118 F.3d 905, 910 (2d Cir. 1997) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)).

Given the substance of Plaintiff Galloway's claims at bar, he lacks standing to bring this action as a "derivative claim" under Connecticut law.  In the Complaint,  Plaintiff alleges that he sues to redress losses sustained by Adherence Consulting Group, LLC (herein "Adherence Consulting") due to breaches of fiduciary duty by Defendant Ahamed. In the case caption, Plaintiff indicates that he brings the action both "individually and in the Right of and for the Benefit of Adherence Consulting Group, LLC." Doc. 1, at 1.  Galloway also includes and describes Adherence Consulting as an entity under the heading "Parties."  *Id.* ¶ 4.  Furthermore, in the "Second Cause of Action," entitled "Breach of Fiduciary Duty," Galloway alleges that Ahamed breached duties owed to Adherence Consulting.  In particular, the Complaint states, in pertinent part: "Ahamed owes Adherence [Consulting] a fiduciary duty to act at all times with undivided and unqualified loyalty,

fairness, in good faith and without self-interest;" "Ahamed has breached that duty;" "Ahamed has also been grossly negligent, reckless and has wholly disregarded her fiduciary duties to Adherence [Consulting];" and "Adherence [Consulting] has been damaged in an amount to be determined at trial in excess of the jurisdictional limitations of this Court." *Id.* ¶¶ 51-54. Lastly, the "Prayer for Relief" explicitly requests "damages in favor of Adherence [Consulting], as against Defendant, for breach of fiduciary duty." *Id.* at 9 ("Prayer for Relief," ¶ 2). In sum, the case caption, party description, second claim, and prayer for relief all suggest that Plaintiff Galloway brings this action on behalf of Adherence Consulting as a member of that limited liability company ("LLC"). Galloway must therefore address the question of whether he lacks standing to bring such an action.

Under Connecticut law, "[a] member or manager [of an LLC] may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company." *Bernblum v. Grove Collaborative*, LLC, 211 Conn. App. 742, 756 (2022), *cert. denied*, 343 Conn. 925 (2022). *See also Channing Real Estate, LLC v. Gates*, 326 Conn. 123, 138 (2017); *O'Reilly v. Valletta*, 139 Conn. App. 208, 214 (2012), *cert. denied*, 308 Conn. 914 (2013). Specifically, members of limited liability companies lack standing to bring derivative actions under Connecticut common law. *Saunders v. Briner*, 334 Conn. 135, 167 (2019). The Connecticut Supreme Court has carved out one exception in the "unique circumstance . . . in which the *sole* member of a limited liability company seeks to remedy a harm suffered by it." *Id.* (emphasis added). Only in that "narrowly tailored exception," may the trial court allow an action raising derivative claims to proceed as a direct action for individual recovery, and then only under set conditions.[1] *Id.* 175-76.

_____

[1] The Connecticut Supreme Court specified that "the trial court may permit the member of a single-member limited liability company to bring an action raising derivative claims as a direct action and may order an individual recovery if it finds that to do so will not (1) unfairly expose the

Here, Adherence Consulting is an LLC, a distinct legal entity with a separate existence from its members.  Plaintiff has indicated that he is not the sole member, but rather holds a thirty per cent (30%) interest in Adherence Consulting. Doc. 1, ¶ 5.  His action does not, therefore, fall under the narrow exception carved out in *Saunders,* 334 Conn. at 176.  Accordingly, Plaintiff lacks standing to bring the action on behalf of – "in the Right of and for the Benefit of" – Adherence Consulting.

In addition, it is unclear whether Galloway may proceed, in the alternative, with a "direct action" for individual recovery. To do so, he must allege that he personally suffered a "distinct and separate injury from the company." *Saunders*, 334 Conn. at 165. *See also Bernblum v. Grove Collaborative*, *LLC*, 211 Conn. App. 742, 756 (2022) ("[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect. ... [I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so."), *cert. denied*, 343 Conn. 925 (2022); *Kelly v. Kurtz*, 193 Conn. App. 507, 540 (2019)  ("Where, for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them.").[2]

Therefore, in order to proceed, Galloway must specify how he was injured *apart from* the injuries allegedly inflicted on Adherence Consulting; and based on the present Complaint, his breach

---

company or defendants to a multiplicity of actions, (2) materially prejudice the interests of creditors of the company, or (3) negatively impact other owners or creditors of the company by interfering with a fair distribution of the recovery among all interested parties." *Saunders,* 334 Conn. at 176.

[2] *Cf. Saunders*, 334 Conn. at 176,  ("trial court properly exercised subject matter jurisdiction over the plaintiff's direct claims" where he was sole member of LLC and loss alleged indisputably related to "bridge loan with his *personal funds*") (emphasis added).

of fiduciary duty claim does not establish that he suffered an injury separate from Adherence Consulting's business restraints and financial losses.  When Ahamed allegedly terminated Galloway's access to email, Microsoft "Teamwork," and Quickbooks, – thereby "fr[eezing] Galloway out of all financial aspects of Adherence" Consulting – Ahamed allegedly rendered Adherence Consulting "unable to make any payments" and brought it "to a screeching halt."  Doc. 1, ¶ 57.  Moreover, in his request for a TRO, Galloway asks the Court to enjoin and restrain Ahamed from "halting Adherence [Consulting]'s financial disbursement approval process and from freezing Galloway out of all financial information and approvals pending the outcome of this action." *Id.* at 9 (¶ 3).  All such requests relate to the running of Adherence Consulting's business, and specifically its ability to function financially.  Moreover, all injuries allegedly result from constraints on Galloway's ability to function in his position *as a member of the LLC*.

Furthermore, even if the Court were to find that Galloway has standing to bring a direct action for  a *separate, personal* injury,  the Court cannot exercise subject matter jurisdiction for the reasons below.

## B.  Diversity Jurisdiction

It is incumbent on a federal court to determine with certainty whether it has subject matter jurisdiction over a case pending before it. If necessary, the court must consider its subject matter jurisdiction *sua sponte* – "on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  Courts thus "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." 546 U.S. at 514.   If subject matter jurisdiction is lacking, the action must be dismissed.  *See* Fed. R. Civ. P. 12(h)(3).

6

In the case at bar, the Court has reviewed the allegations in Plaintiff's "Complaint," which include his assertion that the Court "has original jurisdiction over this matter under 28 U.S.C. § 1332 and supplemental jurisdiction over state claims under 28 U.S.C. § 1367." Doc. 1, ¶ 9. Plaintiff thus alleges that the Court possesses "diversity of citizenship" subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), which grants district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different States."[3]

"A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (citation and internal quotation marks omitted). Moreover, "diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Lungo*, 293 F.3d 579, 581 (2d Cir. 2002). *See also Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 62 (2d Cir. 1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule.").

The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)), *cert. denied*, 140 S. Ct. 1117, 206 L. Ed. 2d 185 (2020). *See also Robinson v. Overseas Mil. Sales Corp.*,

---

[3] From the face of the Complaint, there is no arguable ground upon which the Court may assert the alternative basis of "federal question" subject matter jurisdiction. 28 U.S.C. § 1331, captioned "Federal question," provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." No such federal law is implicated in this case. The Complaint includes two causes of action for state common law breach of fiduciary duty and a third cause of action requesting injunctive relief.

21 F.3d 502, 507 (2d Cir. 1994) ("The burden of proving jurisdiction is on the party asserting it."). Therefore, Plaintiff Galloway has the burden of adequately establishing the citizenship of all parties; and he has failed to do so.

### 1. Parties' Citizenship

In the case at bar,  Plaintiff, as "an individual," alleges he "is residing in the State of Massachusetts." Doc. 1, ¶ 5. He also alleges that Defendant Saleemah Ahamed is "an individual residing in the State of Alabama." *Id.* ¶ 8.  "'An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile,' and residence or place of employment alone are 'insufficient to establish domicile for jurisdictional purposes.'" *Lue v. JPMorgan Chase & Co.*, No. 21-892, 2022 WL 1146219, at *1 (2d Cir. Apr. 19, 2022) (quoting *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53–54 (2d Cir. 2019)).  *See also John Birch Soc. v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir.1967) ("[I]t has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens").

"In general, the domicile of an individual is his true, fixed and permanent home and place of habitation"—*i.e*, "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983).  While an individual may have several residences, he or she can have only one domicile.  *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992).   *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)(for jurisdictional purposes, "'[d]omicile' is not necessarily synonymous with 'residence,' " and "one can reside in one place but be domiciled in another") (citations omitted).   Plaintiff's allegations regarding the individual parties' states of residency do not suffice to establish their citizenship.

Because Galloway lacks standing to bring a "derivative claim" on behalf of Adherence

Consulting, that entity's citizenship may not bear on this Court's subject matter jurisdiction at this time.  However, the Court notes that were Adherence Consulting to be named a plaintiff in this action, its citizenship would be determined by that of its members, which would destroy diversity of citizenship.

According to the Complaint, Adherence Consulting is a "Limited Liability Company duly formed and existing pursuant to the State of New York."  Doc. 1, ¶ 4.  With respect to a limited liability company,  the basis for citizenship is not the state of incorporation or the principal place of business; rather its citizenship is determined by that of its members. *Am. Com. Ins. Co. v. Bronko Constr. LLC*, No. 3:21-CV-1640 (CSH), 2022 WL 313885, at *2 (D. Conn. Feb. 2, 2022) ("[A] limited liability company ... takes the citizenship of *each of its members*." (quoting  *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (emphasis added)); *Andreoni v. Forest City Enterprises, Inc.,* 660 F. Supp. 2d 254, 257 (D. Conn. 2009)  ("It is well-established that an artificial legal entity other than a corporation does not have a state of incorporation or 'principal place of business' for diversity-jurisdiction purposes, and its citizenship is instead determined by the citizenship of that entity's members.") (collecting cases).

As to Adherence Consulting's members, Galloway is allegedly a "thirty per cent (30%) member," Doc. 1, ¶ 5; thus his state of citizenship as an individual, *i.e.*,  his domicile,  would be included within the state(s) of Adherence Consulting's citizenship.

Furthermore, according to the Complaint, Adherence Holding, LLC holds the other "seventy (70%)" interest in Adherence Consulting.  *Id.* ¶ 6.  In particular, Adherence Holding is allegedly "a corporation formed in the State of Delaware," and  consists of two individual members, Jane Shahmanesh and Defendant Ahamed, who each "maintain [an] equal fifty percent (50%)

membership interest in Adherence Holding, LLC." *Id.* ¶¶ 6-7.  If Adherence Holding is indeed a "corporation," for purposes of diversity it is"deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . .where it has its principal place of business," 28 U.S.C.A. § 1332(c)(1).

However, the Court takes judicial notice that Adherence Holding is registered in the State of Delaware as a "limited liability company."  https://icis.corp.delaware.gov/ecorp/entitysearch.  If Adherence Holding is indeed a limited liability company ("LLC"), its citizenship is that of its two individual members, Ahamed and Shahmanesh.  Plaintiff Galloway has alleged that Defendant Ahamed "is an individual residing in the State of Alabama."  Doc. 1, ¶ 8.  As discussed above, allegations of residence alone are insufficient to prove citizenship.  Furthermore, there are no allegations regarding the citizenship of Shahmanesh, who holds the other 50% interest in Adherence Holding.  The Court thus cannot determine Adherence Holding's states of citizenship.

However, in any event, if named as a plaintiff, Adverse Consulting would destroy subject matter jurisdiction in this case.  If Adverse Holding is indeed an LLC, then Adverse Consulting would share citizenship with Defendant Ahamed, who is an individual member of Adverse Holding (the 70% member of Adverse Consulting).  In that case, plaintiff Adverse Consulting and Ahamed would be citizens of the same state.  The Court would lack diversity jurisdiction under 28 U.S.C. § 1332(a).

### 2.  *Amount in Controversy*

Finally, "diversity of citizenship" includes a jurisdictional threshold for the amount-in-controversy.  Specifically, "the matter in controversy must exceed[ ] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).  Moreover, the party bringing the action  "has

the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994).  It thus follows that the amount in controversy must "appear on the face of the complaint or be established by proof." *Mehedi v. Memry Corp*., No. 3:17-CV-809 (CSH), 2017 WL 2485377, at *2 (D. Conn. June 8, 2017) (quoting *Miller v. European Am. Bank*, 921 F. Supp. 1162, 1167 (S.D.N.Y. 1996)).

Here, the text of the Complaint is silent with respect to the amount of damages. To invoke this Court's subject matter jurisdiction, the party bringing the action must provide the Court with sufficient facts to prove  the amount in controversy exceeds the jurisdictional threshold.  Rather than addressing damages in the Complaint, Plaintiff has simply inserted "Over $75,000" in the box labeled "Demand" on the Civil Cover Sheet.  That sheet, however, states on its face that it "neither replace[s] nor supplement[s] the filing . . . of pleadings" and is required solely "for the use of the Clerk of Court for the purpose of initiating the civil docket."  Doc. 1, at 1 ("Civil Cover Sheet" prologue).

## C. *Burford* Abstention Doctrine - Pending Litigation in New York State Court

Lastly, Plaintiff's  Complaint and TRO motion may implicate the *Burford* abstention doctrine.  *See Burford v. Sun Oil Co.*, 319 U.S. 315, 332–34 (1943). Under *Burford* abstention, "Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent

11

policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). *See also Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (laying out the Second Circuit's three-factor test for *Burford* abstention: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern.").

In the dissolution context, the Second Circuit has held that, "given the comprehensive regulation of corporate governance and existence by New York" and "New York['s] strong interest in the creation and dissolution of its corporations[,]" a federal district court may exercise its discretion to abstain from a suit seeking to dissolve a corporate entity. *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668, 671 (2d Cir. 1994). Accordingly, federal district courts in the Second Circuit "have routinely, and almost uniformly, elected to exercise *Burford* abstention over claims for the dissolution of a corporation formed under state law." *Busher v. Barry*, 14-cv-4322 (NSR), 2019 WL 6895281, at *20 (S.D.N.Y. Dec. 18, 2019).

Not only have district courts routinely abstained from dissolution claims, they also have (1) abstained from resolving equitable claims closely related to dissolution, and (2) stayed damages claims closely related to dissolution. *See, e.g., Seo Lim Textile Co., Ltd. v. Suk Chan Kim*, 1:10-cv-3749-ENV-SMG, 2011 WL 13295373, at *3 (E.D.N.Y. Feb. 8, 2011) (staying action for damages pending resolution of petition to dissolve in state court); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 291 (E.D.N.Y. 2009) (adopting magistrate judge's recommendation to "stay . . . the legal claims so that the federal court does not determine factual issues which may be bound up in the state court's corporate dissolution determination").

12

In *Seo Lim Textile Co.*, the district court noted:

> Notwithstanding the absence of a specifically pleaded claim in this action for . . .
> dissolution . . . , that issue is unavoidably entangled in the claims and defenses that
> have been brought here. . . . Bluntly, if this litigation remains active, defendants
> undoubtedly will seek to vindicate here all of the claims and defenses they raised in
> state court, either through the back door of defending [plaintiff's] shareholder action
> or the front door of bringing counterclaims against plaintiff. Adjudicating defendants'
> claims clearly would interfere with New York's control of the dissolution of one of
> its business corporations. . . . Accordingly, in the interest of avoiding interference
> with New York's development of a unified policy concerning corporate dissolution,
> the Court declines to adjudicate plaintiff's claims at this time . . . [and] concludes that
> the appropriate course is to stay the action until current proceedings in state court
> relating to dissolution have concluded.

2011 WL 13295373, at *3–4.

Here, Adherence Consulting is a limited liability company "formed and existing pursuant to the laws of the State of New York[,]" Doc. 1 (Compl.), ¶ 4, and a petition for the dissolution of Adherence "is proceeding and is currently pending" before the Supreme Court of the State of New York, *id.* ¶ 18. Plaintiff seeks damages on two causes of breach of fiduciary duty, *id.* ¶¶ 45–54, as well as equitable injunctive relief, *id.* ¶¶ 55–62. The Court therefore asks the parties to address whether abstention is proper under the above framework. Specifically, the Court would benefit from an understanding of the issues of fact and law involved in the state court dissolution action and the degree to which they relate to the issues in the instant case.

### III. CONCLUSION

Based on the face to the Complaint, the Court questions whether it has subject matter jurisdiction on two grounds and whether it should abstain from proceeding under the *Burford* abstention doctrine. With respect to standing, Plaintiff Galloway, as an individual member of an LLC, appears to lack standing to bring his action in Connecticut for injuries based on wrongs to that LLC. If Plaintiff lacks standing to pursue such a derivative claim and has also failed to state a direct

13

claim, the Court lacks subject matter jurisdiction over the action and must dismiss it.

Furthermore, the Court notes that the Complaint fails to establish that "diversity of citizenship" exists between the parties and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Absent diversity of citizenship, the Court lacks subject matter jurisdiction on alternate grounds.

Finally, the Court questions whether, pursuant to the *Burford* abstention doctrine, it should refrain from interfering with the state proceedings currently pending before the Supreme Court of New York. To determine whether to proceed, the Court needs information regarding the facts and law at issue in the state court action for dissolution, as well as the degree to which they are implicated in the case at bar.

The Court hereby ORDERS that the parties appear before the Court for an expedited status conference on the requested TRO by Zoom on Thursday, **August 11, 2022**, at **10:30 a.m.** The Zoom information for the hearing will be entered in a separate "Notice" on the case docket. The Court notes that Electronic Summons have been issued as to Saleemah Ahamed. Doc. 6. In addition to serving the summons and Complaint, Plaintiff is directed to serve copies of the "Motion for Preliminary Injunction and Temporary Restraining Order" [Doc. 2] and this Order on Ahamed, using her address for service and the contact information for her counsel, if known.[4]

At the Zoom conference, Plaintiff must be prepared to address the issues presented in this Order, including standing, diversity of citizenship, and the *Burford* abstention doctrine as it relates to the pending litigation in New York State Court. In addressing these matters, Plaintiff must show

---

[4] At the current time, Defendant Ahamed has not yet entered an appearance on the case docket.

14

cause why the case should not be dismissed without prejudice to filing in an appropriate jurisdiction.[5]

Defendant Ahamed must also respond to the  issues described above.  If the case goes forward and

Defendant contests entry of the TRO, she must show cause why the TRO should not be entered.

It is SO ORDERED

Dated: New Haven, Connecticut
         August 4, 2022


                                        /s/Charles S. Haight, Jr.
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

---

[5] For example, one district court observed that "New York law gives LLC members standing to bring derivative suits."  *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 646 (S.D.N.Y. 2008) (citing *Tzolis v. Wolff*, 39 A.D.3d 138, 139–40, 829 N.Y.S.2d 488 (1st Dep't 2007), *aff'd* 10 N.Y.3d 100, 855 N.Y.S.2d 6, 884 N.E.2d 1005 (2008); and *Bischoff v. Boar's Head Provisions Co.*, 436 F. Supp. 2d 626, 633-34 (S.D.N.Y. 2006)).